Thank you. Good morning, Your Honors. May it please the Court, Ronald Katz for the appellant. I'd like to reserve two minutes for rebuttal, if I might. Yes. We'll keep track of your time. Yes, Your Honor. Ironically, this case probably started in this very courtroom in February of 2002 when I argued another case that had these same parties in it before Judges Nelson, Noonan, and Hawkins. And Mr. Pistacchio lost that case here, and he decided to start a vendetta against my client. And he had an excellent instrumentality to do that because his best friend of 25 years and his tenant and somebody with whom he did extensive business, Mr. Lawson, was one of the commissioners on the California Transportation Commission. The salient facts that are set out in the complaint are that he used that relationship to start a campaign which deprived Flying J of some land that it contracted to buy from Caltrans. That land was subsequently put out to auction. Mr. Katz, may I ask you just a very practical kind of question? Sure. The complaint clearly says, look, but for Pistacchio's conduct, the October 2002 and the February 2003 decisions wouldn't have been made. Okay. Then it alleges the February 2004 decision by the commission. The complaint does not in terms say that decision was influenced in any way by Pistacchio. And that is the operative decision that, of course, now means you don't have the property that you want. So I understand that what you, your theory is, look, it all started with Pistacchio's conduct, and the effects linger on and continue to infect everything else that happened thereafter. The complaint doesn't exactly say that. So my real question to you is, do you much care if you get leave to amend? Yes, we do. Why? I have a couple of responses to what Your Honor has said. First of all, it's not the case. Well, let me ask you one thing. When you say you care, you're not saying it's necessary, are you? I don't think it's necessary, because you'll you would like it. Well, it's possible. We certainly, I mean, we Under one of your theories, at least, you don't need that. I don't think we need it, no. But then tell Judge Ramer why you would like it. I assume it means that if you lost on your first theory, that then you would like an alternative. Right. Opportunity. Yeah. There's a couple of answers to what you're saying. First of all, there's really no dispute that between October 2nd of 2002 and February of 2004, there was an effect, and it happened, and it happened because of what happened earlier. None of that changes. That happened. Well, I understand, but I assume that you don't really – well, okay. That's why I was being very practical. The best point of the law. I assume it's a practical matter.  You don't want damages for the period of time. I mean, whatever you get. Yes, we do. Right. But your damages are not that you didn't have this property between October 3rd and January 2004. I mean, what you want is the property, and you want the money that you would have lost in income stream forever. I take it. I think that's part of the damages. I mean, as the – Well, you know what? Look, I'm trying to be practical with you here. I mean, you're going to – if you take my – if you listen to what I said, you're going to win no matter what. So my question is – my question is, does it really matter to you how you win? Because – The answer is no. Okay. All right. Well, maybe I don't understand that. If you win under the period I think Judge Reimer is asking you about, that you should amend your complaint to show that this effect lasted through the final proceeding. No, no, no. My question said, I will grant you that the complaint can be read to assert damages in that interim period. But it's also my impression that's not what you really want. You're happy to take that money. Part of what we want. But what you really want in the big bucks are the denial of the property from your point of view and the right to develop it forever. Okay. Right? I think I can clear it up. I think I can clear it up. That is part of our damages, and that is one reason why this case isn't moot. As Judge Reinhart said, in the Bloodshaw case, one of the requirements of mootness is that interim relief or events have completely and irrevocably eradicated the effects of the alleged violation. Right. But to get to the damages that Judge Reimer, to which Judge Reimer is referring, you have to get an amended complaint. Well, I would take the position that if you look at paragraphs 35 and 35 to 39 of the complaint, I don't think that anyone could make a finding that there was an independent board from that. So I don't think we have to amend. But quite frankly, amending is no big deal. It happens every day. It's very simple. And the judge should have permitted us to amend. In fact, he said in his opinion of September 9th the very thing that we had to allege. So clearly there was theories on which we could do that. So one way or the other, I think we do win. But don't get the wrong idea. I have no pride of authorship here. In fact, I didn't author this complaint. But the — I think it's good enough. But if it isn't, great. We'll amend it. Say I didn't put enough in there. That's fine. And it's easy to amend. But I don't think that anyone could honestly say that we thought that that second hearing was independent in any way, shape, or form. But they can never get rid of the interim period. They can never get rid of it. And that is, you know, the ownership of a significant parcel of land for a period of 15 months. I'm going to reserve the rest for rebuttal unless Your Honors have any questions. Thank you. Daniel Leonard representing the Appellees, the Pistachios, and also Central California Kenworth. Given Judge Reimer's comment, I'm not exactly sure where to start here. Well, you know, just — you might want to respond. Let me just sort of cut to the chase of how I see this thing as it went down. I think that Judge Coyle made a foundational — he overlooked something that matters. And that is, he said he did not think that Flying J had made a timely request for your motion to dismiss. That being the case, and given the facts that they set forth in their motion to clarify and the facts on appeal, I don't see how you can really basically deny, leave to amend. Well, I think even — let me put it to you this way. I think even with the facts that they're alleging, I think that it's pretty clear that this was an independent decision and determination by the — by the commission in February. Well, it certainly appears from the complaint that it is a decision that is the operative decision. They say — I don't know whether they can do this or not, but they say they can aver facts that will link Pistachio's allegedly wrongful conduct in October to February with the February 2004 decision. Well, they don't — But regardless of that — let me just finish. Regardless of that, they clearly allege that there's some damages that occurred at least in that interim period. But that only assumes that the — that only assumes that they would have gotten the property in February of — Sure, but that's a matter for tomorrow, isn't it? Well — That assumes the February decision was also tainted. Why? Because otherwise — Why does that assume that? I mean, the theory of — at least one of their theories, which is interference with prospective business advantage, doesn't necessarily mean that they would have ultimately had the advantage. It's a question of proof on damages, but it seems to me that's hard — I don't understand why that isn't a viable theory, even if we assume that there is an independent intervening event. Because the ultimate damage that they suffered was they didn't get the property. But that's the ultimate — And if in February of 2000 there was an independent determination by the commission, that basically ratified the earlier decision. There always had to be — the transfer of the property had to be approved by the commission. Well, let me put it this way. I mean, in a normal case — Unless I'm really missing — No, in a normal case like this, where you don't have a favorable result at the end, what they might do is to put on expert testimony and say, well, here are the probabilities. Our probability was lost. We lost a prospective business advantage and suffered this amount of damage. Now, it's not going to be the quantum of damages for denial of the complete contract, but it may well be a discrete, maybe smaller, maybe not — maybe quite small amount of damages, but there are damages for that period. I really don't — I'm probably being very thick about this, but I really don't understand that. No, because you think they had a trump card with this, and I'm saying I don't think necessarily so. Now, interference with contracts is another matter. I don't think they have that for the interim period, interference with prospective business advantage. It's hard for me to see why that doesn't survive. There had to be — ultimately, in order for them to assert damages, they had to have ultimately gotten the property and been able to exploit it. And if in February of 2000 — let's assume the earlier commission was dirty. It was bad. It was tainted. If in 2000, the commission says no for independent, good, untainted reasons — This is where I'm lost. I seem to be off by myself on this, because you say, assume the first decision was tainted, it was dirty, but for the unlawful activity, they would have received the property then. Why does that become moot? Because as a result of that illegal activity, they didn't receive what they should have received, and two years later, the commission says, well, now we wouldn't give it to them. I mean, why don't they have a claim that they would have received it the first time and that's what they should get? Why is that wiped out two years later? The two years later would never have occurred under this theory. I understand. I don't understand why that's moot. I submit, Your Honor. I think I see your point. Okay. Thank you. Thank you, counsel. Thank you. The case just argued will be submitted.
judges: Reinhardt, Rymer, Thomas